Johnnie BRYANT, Appellant

v.

JEFFERSON MALL COMPANY, L.P. a/k/a Jefferson Mall CMBS, LLC a/k/a Jefferson Mall Company, II, LLC; ERMC II, L.P.; and ERMC III Property Management Company, LLC, Appellees

NO. 2014–CA–000264–MR

Court of Appeals of Kentucky.

RENDERED: MAY 8, 2015; 10:00 A.M.

Discretionary Review Denied by Supreme Court March 9, 2016

Case Ordered Published March 9, 2016

BRIEF FOR APPELLANT: Damon B. Willis, Louisville, Kentucky

BRIEF FOR APPELLEES: James G. Womack, Lexington, Kentucky

BEFORE: ACREE, CHIEF JUDGE; D. LAMBERT AND NICKELL, JUDGES.

*OPINION*

D. LAMBERT, JUDGE:

The Jefferson Circuit Court dismissed Johnnie Bryant's ("Ms.Bryant") premises liability action against Jefferson Mall ("the Mall") via summary judgment. Ms. Bryant now appeals this decision. Upon review of the record, we affirm.

The Mall opens at 9:00 a.m. every weekday morning. Anyone wishing to mall walk in the Mall, i.e., walk through its interior hallways as a form of exercise, may do so for one hour before the Mall's individual shops open at 10:00 a.m. The Mall began this practice in 1998 and has never charged a fee for this convenience.

As a part of her routine, Ms. Bryant walked in the Mall every other weekday morning. She walked a usual route for multiple laps during the designated walking hour. At approximately 9:50 a.m. on the rainy morning of January 11, 2012, Ms. Bryant allegedly slipped on a puddle of water and fell. She and two fellow mall walkers were on their fourth lap at the time. She did not see any water in the floor on the three previous laps and did not notice any signs or warnings posted in the vicinity alerting her of a wet floor. Ms. Bryant was not shopping at the time of her fall, as the individual shops within the Mall were closed, but she did intend to shop after finishing her walk.

On December 13, 2012, Ms. Bryant filed suit against the Mall for the injuries she

allegedly sustained as a result of her fall. Her complaint alleged the Mall negligently maintained its premises. The Mall countered in a summary judgment motion that they did not have a duty under Kentucky Revised Statutes (KRS) 411.190—the recreational use statute—to warn mall walkers of dangerous conditions on the premises or otherwise make the premises safe for them. After a thorough analysis of KRS 411.190, the circuit court granted the Mall's motion. This appeal followed.

When reviewing a trial court's award of summary judgment, the standard "is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App. 1996). This Court must view the record in a light most favorable to the nonmoving party and resolve all doubts in her favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). Since only legal questions and the existence of any disputed material issues of fact are involved, the trial court's decision receives no deference. *Lewis v. B & R Corporation,* 56 S.W.3d 432, 436 (Ky. App. 2001).

◼ Under Kentucky law, a plaintiff must prove the following to establish a *prima facie* negligence claim: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury. *Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 88 (Ky. 2003). If the plaintiff cannot prove the defendant owed her a duty of care, then the defendant is entitled to judgment as a matter of law. *Hammons,* 113 S.W.3d at 89 (citing *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.,* 724 S.W.2d 228, 229 (Ky.App. 1986)).

◼ A landowner is ordinarily subject to a general duty to exercise reasonable care with respect to those who visit his or her property. *Perry v. Williamson,* 824 S.W.2d 869, 875 (Ky. 1992). Historically, Kentucky courts labeled visitors upon land as trespassers, licensees or invitees and reasoned from that label to determine whether the possessor of land exercised reasonable care. *Id.* "A trespasser . . . [came] upon the land without any legal right to do so, a licensee . . . [came] upon land with the consent of the possessor of the land and an invitee . . . [came] upon the land in some capacity connected with the business of the possessor." *Hardin v. Harris,* 507 S.W.2d 172, 174 (Ky. 1974). Today, however, Kentucky courts consider a plaintiff's traditional status along with other circumstances such as "foreseeability, the gravity of the potential harm, and the possessor's right to control his property" to determine the extent of the duty. *Perry,* 824 S.W.2d at 875.

◼ In instances where a landowner makes his or her land or water available at no charge to the public for recreational purposes, KRS 411.190 supersedes this case law and limits the liability of the landowner. That statute reads in pertinent part:

(1) As used in this section:

(a) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty;

(b) "Owner" means the possessor of a fee, reversionary, or easement interest, a tenant, lessee, occupant, or person in control of the premises;

(c) "Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swim-

ming, boating, camping, picnicking, hiking, bicycling, horseback riding, pleasure driving, nature study, water-skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites; and

(d) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land but does not include fees for general use permits issued by a government agency for access to public lands if the permits are valid for a period of not less than thirty (30) days.

\* \* \* \*

(3) Except as specifically recognized by or provided in subsection (6) of this section, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for such purposes.

(4) Except as specifically recognized by or provided in subsection (6) of this section, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreation purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose;

(b) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; or

\* \* \* \*

(6) Nothing in this section limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

Furthermore, to raise KRS 411.190 as a defense, a landowner "must show he knew and condoned the public making recreational use of his property, and by the landowner's words, actions or lack of action it must be able to be reasonably inferred the landowner intended to permit such use." *Coursey v. Westvaco Corp.*, 790 S.W.2d 229, 232 (Ky. 1990).

On appeal, Ms. Bryant advances several arguments in support of her position that KRS 411.190 does not apply to mall walkers. Most of her arguments challenge the analysis of the circuit court's memorandum and order granting summary judgment. After applying the undisputed facts to the legal authorities cited above, however, we can distill these into two main arguments.

Here, there is no question that the Mall both knew about and condoned mall walking on its property from 9:00–10:00 a.m.— a non-business hour. The Mall allowed the general public to walk in its common areas for free every weekday for more than a decade before Ms. Bryant's alleged injury. It is also undisputed that Ms. Bryant was mall walking during a non-business hour at the time of her fall and was not window shopping. Moreover, she did not intend to shop until she finished exercising. As such, the Mall can raise KRS 411.190 as a defense as long as mall walking qualifies as a recreational purpose and the Mall's interior qualifies as land under the statute.

Regarding these issues, Ms. Bryant argues that mall walking is not a recreational purpose contemplated by the statute because mall walking is not an outdoor activity and the specific term does not appear in KRS 411.190(1)(c). Furthermore, she argues that the interior of the Mall is not

land as defined in KRS 411.190(1)(a) because it is an enclosed, commercial facility and not an open or undeveloped expanse of property: the difference being that the former is presumably easier to maintain. In support of these arguments, Ms. Bryant primarily relies on *Keelen v. State, Dep't of Culture, Recreation & Tourism*, 463 So.2d 1287, 1290 (La. 1985), and *Bashioum v. Cnty. of Westmoreland*, 747 A.2d 441, 444 (2000), respectively. For the following reasons, we do not find these arguments persuasive.

When interpreting a statute, the customary rules of statutory construction require Kentucky courts "to ascertain and give effect to the intent of the General Assembly." *Virgin Mobile U.S.A., L.P. v. Com. ex rel. Commercial Mobile Radio Serv. Telecommunications Bd.*, 448 S.W.3d 241, 246 (Ky. 2014). "Resort must be had first to the words, which are decisive if they are clear." *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962). Moreover, the statute's literal interpretation controls. *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002).

■ After analyzing KRS 411.190(1)(c), we conclude the General Assembly took a broad view as to what constitutes a recreational purpose. By inserting the language "includes, but is not limited to" in the subsection, the legislature intended KRS 411.190 to apply to at least some other activities in addition to those mentioned in the statutory text. Mall walking is a form of exercise similar to swimming, hiking, bicycling, water skiing and winter sports. Hiking in particular is closely related to mall walking since both connote walking for a long distance. Furthermore, nothing in the statute clearly indicates the legislature intended to limit recreational purposes to solely outdoor activities. The public can enjoy several of the enumerated activities indoors, including the ones associated with exercise, and this Court sees no reason to draw that distinction. As such, mall walking is a recreational purpose under KRS 411.190.

■ Now we must address whether the interior of the Mall is land under KRS 411.190(1)(a). The statute provides that " 'Land' means land ... private ways and buildings, [and] structures when attached to realty." Through this language, we conclude the legislature once again intended a broad reading of this definition. Nothing in the statute excludes commercial buildings or confines the definition to ancillary structures. To the contrary, this Court held in *Collins v. Rocky Knob Associates, Inc.*, 911 S.W.2d 608 (Ky.App. 1995), that KRS 411.190 applied to a marina "engaged in a commercial enterprise for profit." Furthermore, buildings and structures are expressly contemplated by the subsection; therefore, any requirement that land be open or undeveloped is inconsistent with the legislative intent. And, because a literal meaning of both private building and structure encompasses the Mall's facilities, the Mall's interior constitutes land under the recreational use statute. Thus, KRS 411.190 applies in this case.

■ As a final matter, Ms. Bryant argues a factual issue remains as to whether the Mall willfully or maliciously failed to guard against or warn her of the puddle of water in the floor pursuant to KRS 411.190(6). To support her position, Ms. Bryant cites *Huddleston v. Hughes*, 843 S.W.2d 901 (Ky.App.1992). In that case a basketball goal fell and injured the plaintiff while playing basketball.[1] The defen-

---

1. Playing basketball is not an activity explicitly listed in KRS 411.190(1)(c). The *Huddle-* *ston* decision nevertheless found the recreational use statute applicable.

dants did not anchor the goal to the ground, even though they knew that children often caused the goal to fall while attempting slam dunks. After examining the language "willful or malicious" in KRS 411.190(6), and likening it to an "indifference to the natural consequences of [one's] actions," the Kentucky Supreme Court found those facts presented a jury question. *Huddleston*, 843 S.W.2d at 906.

Here, unlike *Huddleston*, nothing shows the Mall acted with indifference by failing to warn of or guard against the puddle of water. The record is devoid of any evidence anyone had ever noticed a puddle form at that location. There is no indication Ms. Bryant had ever seen such a puddle on any of her previous walks. Moreover, on the day she fell, Ms. Bryant did not see the puddle even though she had already walked the same path three times. Accordingly, a factual issue does not exist, and the summary judgment is AFFIRMED.

ALL CONCUR.